# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2121 | **DATE** | Dec. 9, 2002 |
| **CASE TITLE** | Tally Collier  v  Eddie Murphy, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/20/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Defendant's motion to transfer venue is denied.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | DEC 1 0 2002 date docketed | |
| | Notified counsel by telephone. | | | 12 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 DEC -9 PM 4:03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TALLY COLLIER, )
)
Plaintiff, )
)
v. ) No. 02 C 2121
)
) Judge Robert W. Gettleman
EDDIE MURPHY; EDDIE MURPHY )
PRODUCTIONS, INC., a California corporation; )
LARRY WILMORE; STEVE TOMPKINS; RON )
HOWARD; TONY KRANTZ; BRIAN GRAZER; )
TOM TURPIN; WILL VINTON; WARREN )
BELL; WILL VINTON STUDIOS, INC., an )
Oregon corporation; IMAGINE TELEVISION; )
TOUCHSTONE TELEVISION PRODUCTIONS, )
LLC, a Delaware Limited Liability Company; )
FOX BROADCASTING COMPANY, INC., a )
Delaware corporation; and WARNER BROS. )
TELEVISION, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Tally Collier filed a seven-count complaint against defendants Eddie Murphy, Eddie Murphy Productions, Inc., Larry Wilmore, Steve Tompkins, Ron Howard, Tony Krantz, Brian Grazer, Tom Turpin, Will Vinton, Warren Bell, Will Vinton Studios, Inc., Imagine Television, Touchstone Television Productions, LLC, Fox Broadcasting Company, Inc., and Warner Bros. Television, alleging a violation of the Illinois Right of Publicity Act (Count I), invasion of privacy (Count II), unjust enrichment (Count III), negligent infliction of emotional distress (Count IV), intentional infliction of emotional distress (Count V), defamation (Count VI), and a request for

accounting (Count VII). Defendants have moved to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404. For the following reasons, the motion to transfer is denied.

## Background

Plaintiff is a 74-year-old, retired janitor and lifelong resident of the Chicago Housing Authority's Robert Taylor Homes housing development ("Taylor"). Plaintiff is one of several Taylor residents depicted in a documentary video produced by Taylor resident Daryl Murphy (no relation to defendant-celebrity Eddie Murphy). In April of 1998 Daryl Murphy sent a video depicting Collier and others to television mogul Oprah Winfrey. Accompanying the tape was a letter requesting that Winfrey air the tape and pass it on to Spike Lee, Tom Hanks, Quincy Jones, Ron Howard, and Fred Williamson. Daryl Murphy never received a response from Winfrey.

About nine months after Daryl Murphy's failed attempt to peddle his documentary, Fox Broadcasting began airing nationally "The PJs", a cartoon set in a fictitious urban housing development. Plaintiff alleges that many of The PJs characters are based on the people chronicled in Daryl Murphy's documentary. Specifically, plaintiff alleges that The PJs character Sanchez is directly modeled after Collier himself. Among the similar characteristics are: 1) the use of a voice-box to overcome a speaking disability; 2) "similar head-neck placement"; 3) dark eyebrows; 4) jowled cheeks; 5) similar nose; 6) similar elongated rectangular chin; 7) similar build; 8) use of a cane to aid walking; 9) a penchant for wearing a baseball cap; and 10) a deceased wife. The complaint alleges that prior to instituting this litigation certain "potential defendants" sent plaintiff an artists' sketch of the character dated February 27, 1998—two months prior to Winfrey receiving Daryl Murphy's videotape. The sketch depicts a man with a

cane, a voice-box, a baseball cap, and an elongated square jaw. Plaintiff calls the date on the artist's sketch "questionable."

Plaintiff asserts that family, friends and strangers have told him that Sanchez appears to be modeled after plaintiff. Further, plaintiff says that the depiction of Sanchez has hurt plaintiff's reputation and caused emotional damage. Defendants are mostly California-based individuals and entities that or who played a role in the production and/or airing of The PJs. At least two of the defendants are based in Oregon.

## Discussion

Transfer of Venue Under 28 U.S.C. § 1404

28 U.S.C. § 1404(a) provides that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer is appropriate under § 1404(a) when the moving party demonstrates that: 1) venue is proper in both the transferor and transferee courts; 2) transfer is for the convenience of the parties and witnesses; and 3) transfer is in the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). As a moving party, defendant must show that the "transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citing *Coffey*, 796 F.2d at 219-20). Additionally, defendant must show that a transfer will promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. *See Black v. Mitsubishi Motors Credit of America, Inc.*, 1994 U.S. Dist. LEXIS 11158, 1994 WL 424112 at *2 (N.D. Ill. Aug. 10, 1994).

Defendants do not dispute that venue is proper in this court. Venue is proper in a district where "a substantial part of the events" that gave rise to the claim occurred. 28 U.S.C. § 1391(b). Plaintiff resides in Chicago, where Daryl Murphy's video documentary was produced, where The PJs was aired on Fox's local television station, and where plaintiff's reputation was allegedly harmed. Venue is equally proper in the Central District of California, because that is where The PJs was produced. Therefore, venue is proper in both districts.

Plaintiff first argues that this action could not have been brought in Central District of California because that court would lack personal jurisdiction over defendant Vinton. The language providing that the case can be transferred to any district or division where it "might have been brought," requires the transferee court have personal jurisdiction and proper venue over the action at the time the case was originally filed. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). According to the complaint, Vinton resides in Oregon, is the Chairman of Will Vinton Studios, Inc. which has a presence in California, and is one of the executive producers of The PJ's. Read liberally, the complaint alleges that Vinton participated in the production of The PJ's in California that forms the basis of plaintiff's claims. Thus, the complaint could have been brought in California. The issue, therefore, is whether a transfer would be convenient for the parties and in the interest of justice.

In evaluating the convenience and fairness of a transfer, the court considers relevant private and public interests. The private interests include: 1) plaintiff's initial choice of forum; 2) the situs of material events; 3) ease of access to sources of proof; 4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses (as well as the convenience of potential witnesses); and 5) the

4

convenience to the parties, specifically their respective residences and their ability to bear the expense of litigation in a particular forum. *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997).

Plaintiff's choice of forum is entitled to substantial weight, particularly when it is also his home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Plaintiff's choice is not, however, conclusive. When "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value" even if it is the plaintiff's home forum. *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994). "The weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Systems, Limited*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Thus, the court must consider the situs of material events to determine how much weight to assign to plaintiff's choice of forum.

The PJs was produced in California and presumably aired from California facilities. Daryl Murphy's documentary, however, was produced in Chicago and sent to Chicago-based Oprah Winfrey. More importantly, the actual damage alleged occurred in Chicago, where plaintiff lives, his reputation was allegedly harmed, where he suffered his emotional damage and where Fox aired The PJs on its local broadcast station. Therefore, many of the events giving rise to plaintiff's claim occurred in Chicago, plaintiff's home forum and plaintiff's choice of forum. Therefore, substantial weight will be given to plaintiff's choice of forum.

Defendants further argue that California would be a more convenient forum for accessing proof and witnesses. Although most of defendants' witnesses, production personal, character

5

development staff, etc., are located on the West-Coast, most of plaintiffs' witnesses, fellow Taylor-residents depicted in Daryl Murphy's documentary, friends and relatives who saw the likeness with Sanchez, and possibly Oprah Winfrey staff members are all in Chicago. Thus, California is more convenient for defendants' witnesses and Chicago is more convenient for plaintiff's witnesses. Consequently, defendants have failed to meet their burden to show that California would be a more convenient forum for accessing proof and witnesses.

Another factor weighing in favor of the plaintiffs is the difference in the parties' abilities to bear the expense of litigation in the different forums. All defendants, and most likely, all defendants' witnesses have a much greater ability to bear the expenses of travel and litigation than plaintiff and plaintiff's witnesses. Defendants are some of Hollywood's most successful individuals and corporations. There is little doubt defendants are able to bear the expense of litigating here in Chicago. Plaintiff, on the other hand, is an elderly retired janitor living in public housing. Most of plaintiff's witnesses presumably have similar economic restraints. The effect of a transfer on plaintiff's ability to litigate would be considerable. *See AHP Systems, Inc. v. Collman Ventures, Inc.*, 1997 WL 779108 (N.D. Ill. 1997) (denying transfer because the economic hardship on a 12-person Illinois company would be much greater than the inconvenience for a 1200-employee New York company).

Although, on balance, the private interest factors weigh against transfer, the court must consider the public interest factors that are considered in a motion to transfer venue: 1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; 2) the court's familiarity with applicable law; and 3) the congestion

of the respective court dockets and the prospects for an earlier trial. *See Hughes v. Cargill*, Inc., 1994 U.S. Dist. LEXIS 4827, 1994 WL 142994 at *2 (N.D. Ill. April 14, 1994).

Both communities have an interest in this litigation. The country's entertainment center undoubtedly has an interest in a controversy concerning some of the most famous television producers and most powerful entertainment corporations. Chicago, on the other hand, has an interest in the depiction of its residents of one of its most maligned public housing developments, and the possible misappropriation of likenesses of its citizens. Illinois courts have a strong interest in hearing claims involving their residents. *Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D. Ill 1995). Consequently, because this factor is neutral, it does not help defendants carry their burden of establishing that California is the more convenient forum.

All of plaintiff's allegations are based on Illinois law. While the Central District of California would be quite capable of interpreting and applying Illinois law, this court is clearly more familiar with the applicable law. This factor weighs in favor of plaintiff.

The third public interest factor does weigh in favor of defendants. Accepting defendants' statistics, which plaintiff does not dispute, the Central District of California is likely to get this case to trial five months earlier than this District.

On balance, however, the public interest factors do not favor either side. The private interest factors, however, favor plaintiff. Further, the only overwhelming factor is the economic impact on the parties. Because a transfer would have a much greater impact on plaintiff's ability to litigate this claim, defendants' motion to transfer venue is denied.

## Conclusion

For the foregoing reasons, defendants' motion to transfer venue is denied. This matter is set for a report on status on December 20, 2002, at 9:00 a.m.

**ENTER:** **December 9, 2002**

_Robert W. Gettleman_
Robert W. Gettleman
United States District Judge