Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2121 | DATE | March 24, 2003 |
| CASE TITLE | Tally Collier  v  Eddie Murphy, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Defendants' motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | MAR 2 6 2003 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | 15 docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK  03 MAR 25 PM 12:29 | date mailed notice | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALLY COLLIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 2121 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| EDDIE MURPHY; EDDIE MURPHY ) | |
| PRODUCTIONS, INC., a California corporation; ) | |
| LARRY WILMORE; STEVE TOMPKINS; RON ) | |
| HOWARD; TONY KRANTZ; BRIAN GRAZER; ) | |
| TOM TURPIN; WILL VINTON; WARREN ) | |
| BELL; WILL VINTON STUDIOS, INC., an ) | DOCKETED |
| Oregon corporation; IMAGINE TELEVISION; ) | |
| TOUCHSTONE TELEVISION PRODUCTIONS, ) | MAR 2 6 2003 |
| LLC, a Delaware Limited Liability Company; ) | |
| FOX BROADCASTING COMPANY, INC., a ) | |
| Delaware corporation; and WARNER BROS. ) | |
| TELEVISION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tally Collier has filed a seven-count complaint against entertainment personality Eddie Murphy and a number of entertainment production companies and related persons, claiming that he was the inspiration for a "foamation" cartoon character called "Sanchez" in a cartoon situation television comedy known as "The PJs" that ran on FOX network television from January 1999 until May 2001. Plaintiff asserts claims for violation of the Illinois Right of Publicity Act, 765 ILCS 1075/30 (Count I), common law invasion of privacy (Count II), unjust enrichment (Count III), negligent infliction of emotional distress (Count IV), intentional infliction of emotional distress (Count V), defamation (Count VI), and for an accounting (Count

23

VII). Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which, for the reasons discussed below, is granted.

## FACTS

The facts alleged in the complaint must be taken as true for purposes of the instant motion, Bontkowski v. First National Bank of Cicero , 998 F.2d 459, 461 (7th Cir. 1993). Plaintiff claims that he featured prominently in a documentary video produced at the Robert Taylor Homes public housing project in Chicago. Plaintiff uses an artificial voice box to speak, often uses a cane to help him walk, and has distinct facial characteristics. The documentary film maker, Daryl Murphy, sent a copy of his video to entertainment personality Oprah Winfrey in April 1998 to promote the idea of a show based on his documentary. He never received a response from Ms. Winfrey.

Approximately nine months later, in January 1999, FOX Television began broadcasting The PJs. All of the named defendants had various roles in creating, producing and marketing The PJs television show. The PJs is a comic cartoon show set in a fictitious housing project known as Hilton-Jacobs, showing life in the projects. Plaintiff claims that there are a large number of similarities between the material on Daryl Murphy's video and the characters and scenes from The PJs, and alleges on information and belief that defendants pirated the creative ideas for The PJs from Daryl Murphy's video. Among those ideas were the "identifiable likenesses" of many of the individuals depicted on the video, including that of plaintiff.

Specifically, plaintiff alleges that he is the model for a prominent character on The PJs known as Sanchez who, like plaintiff, uses a voice box to speak, has "similar head-neck placement," facial characteristics, build, and the use of a cane to walk. They both wear baseball

caps with writing above the brims and had wives who are deceased and were cremated. Plaintiff claims that many people have identified him as the Sanchez character from The PJs, and that he has suffered emotional distress from PJs episodes in which an urn containing Sanchez' wife's ashes was destroyed, Sanchez suffered "bodily dismemberment," Sanchez was pushed or fell many stories down an elevator shaft, and suffered "crushing blows," and committed various crimes.

For purposes of defendants' motion to dismiss only, defendants accept these allegations as true, but argue that plaintiff has failed to state a claim under any of his seven counts. The court agrees.

## **DISCUSSION**

Standard under Rule 12(b)(6)[1]

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

---

[1]The court notes that plaintiff's counsel was inexcusably late in filing its brief in opposition to the instant motion. The original motion to dismiss was filed in August 2002, and a briefing schedule was established for that motion as well as a companion motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Although plaintiff filed a brief in opposition to the motion to transfer, he failed to file one in opposition to the motion to dismiss. After the court's December 11, 2002, ruling denying the motion to transfer, the court ordered plaintiff to file a responsive brief on or before January 17, 2003. That brief was not filed until March 3, 2003, and even then it was oversized and not in compliance with Local Rule 7.1. Nevertheless, in order to avoid having the client suffer for the lawyer's dilatoriness, the court accepted the brief and expedited ruling in this matter.

3

Count I – Illinois Right of Publicity Act.

As discussed above, the court will assume for purposes of the instant motion that defendants modeled the Sanchez character after plaintiff without his permission. The Illinois Right of Publicity Act, 765 ILCS 1075/30(a), prohibits the use of a person's identity "for commercial purposes during the individual's lifetime without having obtained previous written consent." "Commercial purposes" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods or services, or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

This does not end the inquiry, however. Recognizing the serious First Amendment implications inherent in regulating artistic and creative expression, the Act specifically excludes such endeavors from its reach. 765 ILCS 1075/35(b) provides:

> (b) This Act does not apply to the following:
>
> (1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services.
>
> \* \* \* \*
>
> (4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1) . . . of this subsection.

Plaintiff raises three arguments in an attempt to overcome what appears to be the clear language of § 35(b) of the Act quoted above, all of which would effectively nullify the exemption. First, plaintiff argues that the series The PJs is itself a commercial product covered

4

by the Act. This is nonsense, because all, or practically all, plays, books, musical works, films, radio productions, or television productions are commercial. Indeed, subsection (4) of § 35 makes clear the legislature's intention of excluding from the exemption even commercials or promotional materials advertising the artistic endeavors identified in subsection (1). Such an exclusion would be totally unnecessary if the production itself were deemed to be "commercial." The court will not read a statute in a manner that would nullify its entire purpose.

Plaintiff also argues that the word "single" in § 35(b)(1) indicates a legislative intent to cover only a single production of a television work (defendants speculate that this might include a made for television movie, but little else). The legislative intent is clear, however, that the word "single" refers, in the context of this section, to a "work of fine art," rather than to the list of other artistic works that follow. Few television productions are limited to a single work. Again, accepting plaintiff's interpretation would not only violate the rules of grammar, it would nullify the exemption and do violence to common sense.

Finally, plaintiff argues that the word "attempt" in § 35(b)(1) should limit the exemption to an unsuccessful attempt to portray plaintiff in The PJs, rather than the successful portrayal as plaintiff alleges in his complaint. Once again, this is a nonsensical interpretation, because an unsuccessful attempt would not be actionable to begin with.

The Illinois Right of Publicity Act clearly and unambiguously exempts artistic works, including television productions such as The PJs, from its coverage, thus avoiding the serious First Amendment problems identified by defendants in their briefs – problems that need not be addressed by the court in light of the clear statutory language. Defendants' motion to dismiss Count I is granted.

Count II – Common Law Claim for Invasion of Privacy.

Plaintiff argues that Count II states a valid claim for common law invasion of privacy under one or more of the following theories: (1) unreasonable intrusion upon the seclusion of another; (2) public disclosure of private facts; or (3) placing another in a false light before the public. Ludemo v. Klein, 771 F. Supp. 260 (N.D. Ill. 1991).

Defendants argue that plaintiff's claim for invasion of privacy is time-barred by the statute of limitations, 735 ILCS 5/13-201, which requires such a claim to be filed within one year. Because The PJs began broadcasting in January 1999, and the complaint was not filed until March 22, 2002, defendants claim that plaintiff was close to two years late in filing his complaint. The program ran until May 2001, however, well within the one year period, thus defeating this argument. Plaintiff's privacy claim arising from broadcasts after March 2001 are timely.[2]

Defendants also argue that the privacy claim was supplanted by the Right of Privacy Act alleged in Count I, citing Villa v. Brady Pub, 2002 WL 1400345, at *3 (N.D. Ill. 2002). As noted in Villalovos v. Sundance Associates, Inc., 2003 WL 115243, at *3 (N.D. Ill. 2003), however, § 60 of the Act specifically provides that the Act "does not affect an individual's common law rights as they existed before the effective date of [the] Act."

Finally, defendants claim that plaintiff's privacy count fails to state a claim upon which relief can be granted because this cause of action cannot be asserted against a defendant who uses another person's name or likeness for artistic purposes, as opposed to commercial or advertising

---

[2]The court agrees with defendants that the complaint fails to identify which episodes of The PJs fall within this timeframe. Had the complaint survived defendants' motion to dismiss – which it does not – plaintiff would have been granted leave to amend in order to cure this defect.

6

purposes, citing Leopold v. Levin, 45 Ill.2d 434, 440, 259 N.E.2d 250, 254 (1970). Although, as plaintiff points out, Leopold may be distinguishable, plaintiff's privacy claim is fatally defective for another reason. The complaint alleges that plaintiff was a willing participant in Daryl Murphy's video, which Mr. Murphy attempted to market for television production. He can hardly complain that his privacy was invaded when that mutual goal came to fruition, albeit through another producer. Indeed, his entire complaint appears to be derivative of the alleged misappropriation of Daryl Murphy's idea, which included a depiction of plaintiff. His invasion of privacy claim is nothing more than an untenable copyright claim in disguise.

Moreover, and perhaps more importantly, each of plaintiff's common law invasion of privacy claims require that the alleged conduct be highly offensive to a reasonable person. See Villalovos, at *2 (N.D. Ill. 2003) (to state a claim for false light, plaintiff must allege that the false light in which he was placed was highly outrageous); Munoz v. Chicago School Reform Bd. of Bd. of Trustees, 2000 WL 152138, at *11 (N.D. Ill. 2000) (to state a claim for public disclosure of private facts, plaintiff must allege that "the matter made public was such as to be highly offensive to a reasonable person"); Id. (to state a claim for intrusion upon the seclusion of another, plaintiff must allege "an intrusion that is offensive or objectionable to a reasonable person").

Defendants' alleged conduct in the instant case does not come close to meeting this threshold, particularly in light of his willingness, as admitted in the complaint and discussed above, to have Daryl Murphy portray him as a character in his television documentary that he attempted to market to Oprah Winfrey. In addition, as noted by defendants, the Illinois Appellate Court in Berkos v. NBC, Inc., 161 Ill. App. 3d 476, 495, 515 N.E.2d 668, 679 (Ill. App. 1st Dist.

7

1987), held that "no one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation." (Citation omitted.)

For all these reasons, defendants' motion to dismiss Count II is granted.

Counts III and VII – Unjust Enrichment and an Accounting.

Plaintiff's claims in Counts III and VII for unjust enrichment and for an accounting, respectively, are merely claims for relief based on his substantive counts, which have been dismissed. Moreover, they are surplusage and unnecessary as separate counts. Defendants' motion to dismiss these counts is granted.

Counts IV and V – Intentional and Negligent Infliction of Emotional Distress.

First, defendants correctly point out that plaintiff cannot claim negligent infliction of emotional distress (Count V) because his complaint clearly alleges that any actions taken by defendants were intentional, not merely negligent. Brackett v. Galesburg Clinic Ass'n, 293 Ill. App. 3d 867, 872, 689 N.E.2d 406, 410 (1997).

To claim damages for intentional infliction of emotional distress, plaintiff must allege and prove the following elements: (1) defendants engaged in extreme and outrageous conduct; (2) defendants intended or expected that the conduct would cause severe emotional distress; and (3) the conduct caused severe emotional distress. Doe v. Calumet City, 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (1994). Plaintiff must allege that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 866 (Ill. App. 1st Dist. 2000), citing Public Finance Corp. v. Davis, 66 Ill.2d 85, 89-90, 360 N.E.2d 765, 767 (1976).

8

The complaint in the instant case fails to meet this standard. The Sanchez character in The PJs is, quite obviously, fictional. He is a cartoon. His antics and the unfortunate experiences he encounters are plainly fanciful. No reasonably person could take them to mean that they are supposed to be accurate portrayals of plaintiff's life. Moreover, again, plaintiff was quite willing to be portrayed as a character in Daryl Murphy's video, and cannot be heard to complain that The PJs so shocked him that he was actionably emotionally distressed.

Defendants' motion to dismiss Counts IV and V is granted.

Count VI – Defamation.

Defendants' argument that plaintiff's defamation claim should be dismissed because it was filed more than one year beyond the statute of limitations, 735 ILCS 5/13-201, is only partially correct. As discussed above with respect to the privacy claim, any defamation that plaintiff could identify occurring within the year preceding the filing of the complaint on March 22, 2002, would be timely.

Defendants are correct, however, that plaintiff's defamation claim fails on its merits. As defendants point out, the only possible defamatory statements identified in the complaint occurred in episodes where characters in The PJs, including Sanchez, committed certain crimes such as breaking into government buildings and stealing supplies.[3] Once again, no reasonable person could construe these episodes as being defamatory of plaintiff. The PJs is a cartoon. The characters are fictitious, and their antics are supposed to be funny, not serious. It would simply

---

[3]It is unclear from the complaint that any of these episodes were broadcast within the year preceding March 22, 2002.

be impossible to conclude that plaintiff was defamed by having a cartoon character who is based on his likeness engage in the type of activities described in the complaint.

Defendants' motion to dismiss Count VI is granted.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is granted.

**ENTER:** **March 24, 2003**

**Robert W. Gettleman**
**United States District Judge**